IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF KANSAS

| | |
|---|---|
| BALL KELLY, LLC D/B/A TAYLOR KELLY, LLC, ) ) ) Plaintiff, ) ) v. ) ) ) BANK OF AMERICA, N.A., ) ) Defendant. ) ) | Case No. 11-2323-CM |

## MEMORANDUM AND ORDER

Plaintiff Ball Kelly, LLC d/b/a Taylor Kelly, LLC, brought this action in the District Court of Johnson County, Kansas, seeking an equitable lien for work completed on the Corbin Park retail center construction project before Corbin Park declared bankruptcy.  Defendant Bank of America, N.A. provided funds to Corbin Park, L.P. ("Corbin Park") to pay for construction and other fees and expenses related to the property.  Plaintiff claims that defendant knew that Corbin Park was in dire financial straits but did not notify plaintiff, who continued work on the project for three months before it realized that it would not be paid for that work.  Plaintiff claims that over two million dollars remains unpaid and wants defendant to pay it out of undisbursed loan proceeds.  Plaintiff has already sought payment from Corbin Park in bankruptcy court through a mechanic's lien, but defendant has first priority.

The case is now before the court on Defendant's Motion to Dismiss or, Alternatively, Motion for Stay (Doc. 14).  Defendant claims that plaintiff's strategy is merely to get its case before another court.  According to defendant, the question of who gets paid first has already been settled by the bankruptcy court.  Defendant contends that plaintiff's claim for equitable relief is not recognized in

-1-

Kansas, that plaintiff is collaterally estopped from bringing this claim, and that the court must dismiss the case because Corbin Park is an indispensable party who cannot be joined in this action. Alternatively, defendant asks the court to stay this action while the bankruptcy decision is appealed.

### I. Factual Background

The relevant facts, taken from plaintiff's complaint, are as follows:

Defendant agreed to advance up to $107 million to Corbin Park for construction of a retail center. Corbin Park contracted with plaintiff to construct a parking garage and building. During the project, defendant distributed over $30 million of the loan proceeds to plaintiff and others—leaving over $75 million undistributed.

Plaintiff knew that defendant made the construction loan to Corbin Park. Plaintiff, in fact, relied on the proceeds from that loan to pay for its work.

In March 2009, defendant determined that Corbin Park had defaulted on the loan. But defendant did not notify plaintiff or any other contractors of the default. Instead, defendant continued to accept Pay Applications and allowed plaintiff to continue working on the project. The value of the construction project—which was collateral for the loan—increased as a result of plaintiff's continued work on the project. Defendant advised Corbin Park (but not plaintiff) on July 21, 2009, that all sums disbursed were due and payable.

Corbin Park filed a bankruptcy petition. Although plaintiff has a mechanic's lien, the bankruptcy court found that defendant's mortgage lien has priority over any mechanic's liens. This decision is currently on appeal.

### II. Legal Standard

Federal Rule of Civil Procedure 12(b)(6) governs motions to dismiss for failure to state a claim. *See* Fed. R. Civ. P. 12(b)(6). *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544 (2007), abrogated the

previous standard granting a 12(b)(6) motion to dismiss when "it appears beyond a doubt that the plaintiff can prove no set of facts in support of its claims which would entitle it to relief." *See* 550 U.S. at 561 (citing *Conley v. Gibson*, 355 U.S. 41, 45–46 (1957)). *Twombly* set forth the new standard for pleadings, stating that although "heightened fact pleading of specifics" was not necessary, the pleadings should include "enough facts to state a claim to relief that is plausible on its face." *Id.* at 570.

The pleading should include "more than labels, conclusions, and a formulaic recitation of the elements of a cause of action." *Ellis v. Isoray Med., Inc.*, No. 08-2101-CM, 2008 WL 3915097, at *1 (D. Kan. Aug. 22, 2008) (quoting *In re Motor Fuel Temperature Sales Practices Litig.*, 534 F. Supp. 2d 1214, 1216 (D. Kan. 2008)). Additionally, the court takes well-pleaded facts as true and resolves any reasonable inferences in the plaintiff's favor. *Id.* The court does not make a determination on whether the plaintiff will prevail; rather, the issue is whether the plaintiff is permitted to offer evidence to support its claims. *Id.*

### III. Discussion

Plaintiff seeks an equitable lien on undisbursed loan proceeds. Plaintiff seeks this relief because, despite plaintiff's mechanic's lien, it is unlikely that plaintiff will recover any funds from the Corbin Park estate unless the sale of the Corbin Park property produces funds in excess of the outstanding bank loan. Essentially, what plaintiff wants the court to do is ensure that it will be paid even though the bankruptcy court determined that defendant had first lien priority. But instead of ordering that plaintiff be paid out of the bankruptcy estate, plaintiff now asks the court to rule that defendant must pay plaintiff out of loan proceeds that it did not disburse to contractors or subcontractors. In other words, plaintiff alleges that defendant engaged in conduct justifying payment out of undistributed funds even though defendant was not the party who had a contract with plaintiff.

A few courts have recognized an equitable lien on undisbursed loan proceeds. *See, e.g.*, *Embree Constr. Group v. Rafcor*, 411 S.E. 2d 916, 922–23 (N.C. 1992); *Morgen-Oswood & Assoc., Inc. v. Cont'l Morg. Inv.*, 323 So. 2d 684, 684–85 (Fla. App. 1975). Kansas is not one of them. Kansas has not been asked to address whether an equitable lien can be applied to undisbursed loan funds. Significantly, both the *Embree Construction Group* and *Morgen-Oswood* courts recognized an equitable lien on a completed construction project. In *J.G. Plumbing Service, Inc. v. Coastal Mortgage Co.*, the Florida Appellate court declined to extend the doctrine to an unfinished construction project. 329 So. 2d 393, 395–96 (Fla. App. 1976). In that case, the court reasoned:

> We do not believe that this principle can be extended to a situation where the default occurs before the construction contemplated by the loan agreement has been completed. Under these circumstances, the construction lender is left with the remedy of foreclosing upon a partially completed building. More often than not, the market value of a partially constructed building will be substantially less than the total cost of the labor and material which has already been incorporated into its construction. Under these circumstances, it cannot be said that the mortgagee has been unjustly enriched. To adopt the rule urged by appellant would place upon construction lenders the unwarranted duty of affirmatively keeping all of the subcontractors and materialmen advised of the status of the mortgage and might even discourage a mortgage lender from working with its mortgagor so as to enable him to correct his default and to complete the job.

*Id.* at 395.

This court does not believe that Kansas would elect to recognize an equitable lien on undisbursed loan proceeds, particularly on an uncompleted construction project. Although the court understands that plaintiff is not asking to be paid out of the bankruptcy estate (which would explicitly contradict the bankruptcy court's ruling), the practical effect of plaintiff's request is to ensure that plaintiff is paid before defendant, out of funds that defendant presently holds (which somewhat implicitly contradicts the bankruptcy court's ruling). Plaintiff claims that this shifting of responsibility is appropriate because defendant should have told plaintiff of the default so that plaintiff could have stopped working on the project sooner. But plaintiff has not alleged any facts sufficiently suggesting

that defendant had a fiduciary responsibility to plaintiff; to the contrary, defendant's contract was with Corbin Park.  "In the ordinary case of a first mortgage and subcontracts, there exists no duty on the part of the mortgagee to disclose pending or threatening defaults to contractors." *Mortg. Assoc., Inc. v. Monona Shores, Inc.*, 177 N.W.2d 340, 349 (Wis. 1970).  And the court does not believe that Kansas would recognize an equitable lien on undisbursed loan proceeds when the only facts plaintiff alleges to support detrimental reliance are that (1) plaintiff knew that defendant provided a construction loan, and (2) defendant funded the Pay Applications submitted by plaintiff before it became concerned with Corbin Park's default (thereby establishing a course of conduct).  *Cf. R.M. Shoemaker Co. v Se. Penn. Econ. Dev.*, 419 A.2d 60, 63 (Pa. Super. 1980) (noting that reliance was on the credit of owners).

Under the circumstances of this case, the court will not create a cause of action where Kansas courts have not recognized it.  Because the court determines that no cause of action exists for the relief sought in plaintiff's complaint, the court need not reach the remainder of defendant's arguments.

**IT IS THEREFORE ORDERED** that Defendant's Motion to Dismiss or, Alternatively, Motion for Stay (Doc. 13) is granted.  The case is closed.

Dated this 14th day of November, 2011, at Kansas City, Kansas.

s/ Carlos Murguia
**CARLOS MURGUIA**
**United States District Judge**
